UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>KENNETH BASH, et al,<br><br>　　　　　　　Defendants. | Case No. 1:20-CR-00238-JLT-SKO<br><br>ORDER DENYING DEFENDANT JOHNSON'S MOTION TO SEVER<br><br>(Docs. 722) |

     Kenneth Johnson moves to sever his trial from the remaining defendants. He argues the jury will have difficulty compartmentalizing the evidence, the elements of the offenses with which he is charged are complicated, the jury may compromise when coming to a verdict, and he is entitled to a speedy trial. (Doc. 722) For the reasons set forth below, the motion is **DENIED**.

**I.　　Background**

     The government alleges that the "Aryan Brotherhood is a white, race-based gang formed in the California prison system in about 1964 by white inmates who wanted to gain power and authority in prison." Doc. 622 at 2. The AB "is a criminal organization whose members and associates engaged in drug trafficking, theft, and acts involving murder, extortion, burglary, robbery, and assault." *Id*. at 2. According to the government, the purpose of the Aryan Brotherhood is to control illegal activities within the California prison system, to enrich its leaders, members, and associates, to preserve, protect and expand the reach of the AB's power

1

1   and to threaten and use violence to "keep victims in fear of the AB." (Doc. 622 at 3.) The Aryan
2   Brotherhood does this by authorizing and condoning members and associates to commit criminal
3   acts, by engaging in acts, such as "drug trafficking, theft, robbery, and extortion." *Id*. The AB is
4   run by a "three-man commission with authority over the entire enterprise." (Doc. 622 at 3)
5   "[S]enior members of the organization have more authority than others." *Id*. Murder of a
6   nonmember does not need commission approval. *Id.*
7       In this action, the government has charged Mr. Johnson in Counts 2 and 3 with murder in
8   aid of racketeering. (Doc. 622 at 12-14) The government alleges that he murdered, and aided and
9   abetted the murder of, Victim 1 and Victim 2, who were killed on October 4, 2020. *Id.* Along
10  with Mr. Johnson, the government asserts that defendants Clement, Bannick and Gray are
11  complicit in these murders. *Id*. In Counts 4 and 5, the government alleges Clement, Bannick,
12  Field and Perkins murdered Victim 11 and Victim 12 on March 8, 2022. *Id*. at 15-18. In Count 6,
13  the government alleges defendant Bash, Weaver and Pitchford murdered Victim 3 on October 1,
14  2020. *Id*. at 18. In Counts 7-10, 13-14, the government alleges various of the defendants were
15  engaged in drug trafficking activities. *Id*. at 19-22. In Counts 10 and 11, the government alleges
16  that a defendant unlawfully possessed a gun. *Id*. at 20-21.  In total, the government alleges that
17  nine defendants engaged in criminal acts from 2020 through 2022.
18      In Count 1, the government alleges eight of the defendants including Johnson, conspired
19  to participate in a racketeering enterprise. (Doc. 622 at 5-12) In support of the RICO count, the
20  government alleges that the racketeering activity includes multiple murders, extortion, robbery,
21  fraud, identity theft, drug trafficking and arson. *Id*. at 6. Specifically, the government asserts that
22  Johnson committed the murders set forth in Counts 2 and 3, the murder of Victim 13 and
23  conspired to commit robbery in furtherance of the conspiracy. *Id*. at 6. The government alleges
24  also that the murders described in Counts 4, 5 and 6, the murder of Victim 5, the conspiracy to
25  murder victim 8, and the conspiracy to distribute narcotics were acts committed in furtherance of
26  the conspiracy. *Id*. at 6-7. Based on the special sentencing factors alleged in the superseding
27  indictment, if he is convicted of either Counts 2 or 3, Mr. Johnson could be subjected to the death
28  penalty.

Though this case was filed on November 17, 2020 (Doc. 1), Mr. Johnson was added to the case nearly two years later with the filing of the superseding indictment (Docs. 374, 393). At his first appearance on September 13, 2022, the Court excluded time for purposes of the Speedy Trial Act, without objection by Mr. Johnson. (Doc. 393) The Court held a status conference on November 2, 2022 (Doc. 465), a which Mr. Johnson did not assert his speedy trial right. (Doc. 483 at 23) As the next status conference date approached, the parties stipulated to continue the next hearing—with a time exclusion—based upon the need to file an additional brief related to defendant Clement's discovery motion. (Docs. 489, 490) Once again, the parties filed a stipulation—drafted and filed by Mr. Johnson's counsel—to continue the status conference and which included a time exclusion (Doc. 503). The Court granted the stipulation. (Doc. 505)

In the meanwhile, on November 19, 2022, Mr. Johnson joined in Mr. Clement's motion for discovery (Doc. 472). (Doc. 473) On February 17, 2023, Mr. Johnson filed a supplement to Mr. Clement's motion for discovery (Doc. 472). (Doc. 526). On February 20, 2023, Mr. Johnson filed a pretrial motion seeking to have the indictment unsealed. (Doc. 528) On February 23, 2023, Mr. Johnson's counsel and the government filed a stipulation to set a motion schedule with a hearing on the anticipated discovery motion set on May 3, 3023. (Doc. 539)

On March 9, 2023, upon the stipulation of all the parties except Mr. Johnson, the Court designated the action as complex. (Docs. 549, 556) On May 11, 2023, the Court set a motion schedule with the hearing date on June 21, 2023. (Doc. 621) On May 16, 2023, Mr. Johnson joined in Clement's renewed discovery motions (Doc. 633.) Doc. 642) On June 7, 2023, Mr. Johnson joined in Mr. Bash's discovery motions (Docs. 675, 639). (Docs. 677, 678) These motions were heard and denied on August 30, 2023. (Doc.761) The Magistrate Judge denied Mr. Johnson's motions reflected in docket entries 526, 528 and 595 on May 17, 2023 (Doc. 648) and the Court ruled on the appeal of the rulings on these motions on July 10, 2023 (Doc. 710). On July 28, 2023, Mr. Johnson filed the instant motion to sever (Doc. 722). On August 8, 2023, Mr. Johnson joined in Mr. Bash's reply to the opposition to his motions (Doc. 732) and joined in Mr. Clement's reply to the opposition to his motion (Doc. 735). (Docs. 733, 741)[1]

---

[1] In the meantime, the Court has also determined the motion by defendant Perkins for appointment of a

3

## II. Analysis

Federal Rule of Evidence 14 provides for the severance of charges or defendants if joinder "appears to prejudice a defendant or the government" and permits separate trials of counts or defendants, or "any other relief that justice requires." The standard for showing prejudice is high. *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). When the government has properly indicted defendants jointly, a joint trial is the "preference in the federal system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id*. (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). A showing of some prejudice is not enough. Rather, the "court should grant a severance under Rule 14 only if there is a *serious* risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, at 539, emphasis added. Serious risk of harm is shown,

> . . . when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

"The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986)). A defendant:

> must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to

---

coordinating discovery attorney (Docs. 793, 810) and joined in by Mr. Johnson (Doc. 798). Pending before the Court is the motion to amend the protective order, filed on October 5, 2023 by defendant Clement (Doc. 811) and joined in by Mr. Johnson on October 11, 2023 (Doc. 814). The hearing on this motion is set on November 15, 2023. (Doc. 818)

instruct the jury on the admissibility of evidence as to each defendant.
*United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

### A. The defendant has failed to demonstrate serious prejudice will result if the Court does not grant severance

Mr. Johnson makes a multi-point argument in urging the Court to sever his trial from the other codefendants. First, he argues that the jury will be unable to compartmentalize the evidence such to consider only that evidence relevant to him while deliberating. Mr. Johnson argues primarily that the evidence about the second double murder, set forth in Counts 4 and 5, poses the potential to confuse the jury because it and the double murder described in Counts 2 and 3 with which he is charged, are "strikingly similar." Doc. 722 at 7. He explains that the similarities include that both are double murders, defendants Bannick and Clement are alleged to have been involved in both double murders, both double murders occurred outside of prison, and both are alleged to have been committed for a VICAR[2] purpose. Though, of course, these are similarities, the Court does not find that this makes these two events "strikingly similar." The victims are not the same, the locations where the murders occurred are not the same, the dates when they occurred are not the same and the actors are not all the same. Also, the Court has no information that the manner of the killings is similar.

Second, Mr. Johnson complains that he "will have to sit through weeks—if not months—of evidence" regarding crimes that do not bear on his guilt if his trial is not severed. However, though this other evidence would not bear on whether he is guilty of Counts 2 and 3, he offers scant argument that it would not bear on whether he is guilty of Count 1. "[A] joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004), as modified, 425 F.3d 1248 (9th Cir. 2005). Neither does a joint trial relieve the government of its obligation

---

[2] A Violent Crime in Aid of a Racketeering crime must have been committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959.

5

1   to prove each defendant's liability beyond a reasonable doubt. *Zafiro*, 506 U.S. at 540–41.

2   Mr. Johnson asserts that the government may present evidence that he "occupied a
3   leadership role in the AB, that he assisted or aided another in ordering at least one murder, and
4   that "AB members are required, when ordered, to kill without hesitation." (Doc. 722 at 14) He
5   speculates that "makes him a target of his co-defendants at a joint trial to pile blame upon and
6   point the finger at." (Doc. 722 at 14) If this is so, however, he has presented no evidence or any
7   claim, that any codefendant intends to do this.[3] And, of course, duress is not a defense to the
8   murders alleged here. *United States v. LaFleur*, 971 F.2d 200, 206 (9th Cir. 1991).

9   On the other hand, the government has alleged numerous acts completed in furtherance of
10  the conspiracy. (Doc. 641 at 6-8) Though Mr. Johnson argues that not all of this evidence may be
11  admitted due to its "highly prejudicial nature," he offers no authority to support this claim and
12  does not suggest which evidence should be precluded. Thus, the Court concludes that based upon
13  the proof necessary related to Count 1, he has failed to demonstrate that severance is warranted.
14  *See Zafiro* at 540.

15  Third, though Mr. Johnson argues that he has a strong argument that he is not guilty of
16  the double murder, he does not explain how this bears on the question of whether severance
17  should be granted. "[I]t is well settled that defendants are not entitled to severance merely
18  because they may have a better chance of acquittal in separate trials." *Zafiro*, at 540. "The
19  inevitable consequence of any joint trial is that the jury will become aware of evidence of one
20  crime while considering a defendant's guilt or innocence of another crime." *United States v.*
21  *Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006). Only where the "risk of prejudice is high," is the
22  court "more likely" to consider severance but often, "less drastic measures, such as limiting
23  instructions," are sufficient. *Id*. Moreover, as discussed above, the Court has no confidence that
24  his chance of acquittal is impacted at all if his trial is severed.

25  Fourth, Mr. Johnson argues that, though there is no risk the jury will be unable to
26  compartmentalize or become confused by the evidence related to the evidence admitted related to

---

[3] If there is actual evidence that a defendant intends to testify that Mr. Johnson ordered a murder, the Court's calculus on this topic could very well change.

6

Counts 7 through 14, this poses the potential that he will be found guilty merely due to his presence at trial. This evidence may be prejudicial as discussed above, but there is no showing that this evidence is not admissible against Mr. Johnson or that there is a likelihood that the prejudice is undue. Again, as noted above, the government bears the burden of establishing that the Aryan Brotherhood is a racketeering enterprise, and this evidence, even if he is not an actor in each act, bears on the relevant questions. On the other hand, as has been recognized in many other similar racketeering cases, here, "the predicate or underlying crimes alleged are well within the ability of the ordinary juror to understand." *Fernandez*, at 1244. At least as of now, the Court understands Mr. Johnson's defense to be that he didn't commit murder and he didn't tell anyone to commit murder and any testimony that says he did is unreliable due to the benefits the witnesses are receiving for their testimony. Nothing about this defense is beyond ordinary understanding.

The Court does not discount Mr. Johnson's concerns about trial fairness. However, Mr. Johnson has not shown a likelihood that the jury will confuse the evidence or wrongly assume he is guilty based upon evidence presented as to his codefendants, and he has not shown severance is the only solution. The court will give limiting instructions[4] and provide the jury a clear verdict form or, more likely, multiple verdict forms, to minimize any confusion. The Court will also permit separate questioning and argument. In short, Mr. Johnson has failed to meet his burden of establishing serious prejudice if his trial is not severed.

### B.   Constitutional Right to a Speedy Trial

The rationale that joint trials save time and preserves resources is beyond dispute. Trying this case over and over would require a great amount of judicial resources, would require prosecutors to "present[ ] the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." *Richardson*, 481 U.S. at 210. These costs would be even greater here where the conspiracy is alleged to have involved so many

---

[4] It is well established "juries are presumed to follow their instructions." *Zafiro,* at 540 (quoting *Richardson,* at 211). The Court recognizes that in some circumstances, such as where a codefendant's testimony will inculpate a defendant, limiting instructions may be inadequate. *Bruton v. United States*, 391 U.S. 123, 137 (1968).

people and to have lasted for so many years. On the other hand, the right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment," (*Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967)), and it is "one of the most basic rights preserved by our Constitution" (*Id.* at 226). Despite this, Mr. Johnson cites to no Supreme Court or Ninth Circuit—or any circuit[5]—authority that the speedy trial right justifies severance. Mr. Johnson cites only to *United States v. Yandell*, 2023 WL 2620418 (E.D. Cal. March 23, 2023) for the proposition that a speedy trial is one of the "specific trial rights" that can justify severance under Rule 14. Even assuming this is true[6], Mr. Johnson provides little support that it justifies severance in this case.

Without finding that a speedy trial right can justify trial severance, as the Court did in *Yandell*, the Court will evaluate the defendant's claimed prejudice resulting from the lack of a speedy trial under the Sixth Amendment, by considering the following questions: the length of time between indictment and trial; the cause of the delay; whether the defendant demanded a speedy trial; and the prejudice the defendant has suffered due to the delay. *Barker v. Wingo*, 407 U.S. 514, 530-532 (1972).

First, as discussed above, Mr. Johnson was not brought into this case until the filing of the superseding indictment last September. Second, he has pointed to no source of the cause of the delay and, as detailed above, it appears that it has been caused by the multiple and repeated discovery motions and the fact that the government filed the second superseding indictment, adding defendants.

Third, though objecting to the designation of the case as "complex," Mr. Johnson has never articulated a basis for his objection[7]. Despite that he has requested the Court set a trial date,

---

[5] Mr. Johnson relies on *United States v. Black*, 918 F.3d 243 (2d Cir. 2019), which held that dismissal of a death penalty case was justified due, in part, to the government's delay in deciding whether it would pursue the death penalty. (Doc. 722 at 15). However, as discussed below, *Black* does not support his argument here and, in fact, does not even speak to facts even remotely analogous.

[6] The Court remains unconvinced that the speedy trial right is one of the "specific trial rights" that justify severance. Violation of the speedy trial right justifies dismissal of the action, not severance of the trial. 18 U.S.C. 3161(c)(1). *See United States v. Clymer*, 25 F.3d 824, 831 (9th Cir. 1994); *United States v. Fischer*, 219 F. App'x 683, 685 (9th Cir. 2007)

[7] The facts support, and the Court finds, that the case *is* complex. The indictment, as pointed out by Mr. Johnson, involves an extensive conspiracy involving the Aryan Brotherhood (Doc. 622 at 1-11) which, courts have found is a highly organized criminal organization. *United States v. McKinney*, 954 F.2d 471, 473 (7th Cir. 1992); *United States v. Abel*, 469 U.S. 45 (1984); *United States v. Mills*, 704 F.2d 1553 (11th

he has never insisted that the trial begin within the speedy trial deadlines. As detailed above, he has repeatedly stipulated to exclude time or joined in motions or filed his own motions, which have stopped the speedy trial clock. 18 U.S.C. § 3161(h)(1)(D). Indeed, part of the reasoning for seeking the disclosure of witnesses and cooperating witnesses, if any, is that Mr. Johnson contends that it will take time—weeks or months—to investigate these witnesses. His attorney has admitted in open court at least twice that once these disclosures are made, he will likely seek to continue the trial date, if one is set.[8] (Doc. 746 at 6) Thus, the argument that failure to sever his trial does injury to his speedy trial right, lacks support.

Finally, though asking for a trial date to be set, Mr. Johnson has not insisted on a "speedy" trial. Mr. Johnson complains that he remains "sitting" in custody due to this case (Doc. 746 at 5), but counsel confirmed at the hearing that Mr. Johnson is serving a life sentence in state prison. Thus, whether Mr. Johnson's trial is severed, his custodial status will be unaltered.

Mr. Johnson complains that he must suffer under the specter of the death penalty for as long as the case continues, and he complains that the government has not yet made its decision whether it will seek the death penalty. However, he fails to acknowledge that, as of the time of the hearing, he had not presented his mitigation evidence to the government, and he anticipated that he would not be prepared to do so for weeks. Even if he becomes prepared more quickly, his attorney indicated that he intends to withhold this evidence until the government receives the mitigation evidence from all of the codefendants—which is not slated to happen for at least another month from now. Thus, he bears responsibility for the delay in the government making

---

Cir. 1983). The second superseding indictment (Doc. 622) includes 14 counts brought against 11 defendants and includes acts which occurred as long ago as 2015. (Doc. 622 at 7) It charges murder, racketeering, conspiracy, narcotics, and weapons offenses. (Doc. 622) The RICO charge identify that the Aryan Brotherhood had a pattern of racketeering activity including murder, extortion, robbery, narcotics, and arson. *Id.* The number of items produced in discovery exceed 22,000. (Doc. 700 at 2) The codefendants have consistently articulated that more time is needed to prepare for trial. Two more defendants were arraigned in May and added to the case (Doc. 658; Doc. 690) and another two arraigned and added in June. (Doc. 780). As a symptom of the case's demands, the Court's docket contains more than 800 entries.

[8] This suggests that Mr. Johnson is not so much desiring to go to trial quickly but that he wants a trial date set so that he can learn the identities of any cooperating witnesses. For example, though Mr. Johnson asserts on the one hand that he "is ready for trial," at the same time he says that he "cannot meaningfully prepare his defense until a trial date is set." (Doc. 746 at 6)

this crucial decision.

Mr. Johnson has directed the Court to no other prejudice he has suffered or will suffer if his trial is not severed. This is insufficient. In *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir.1982), the court explained, "Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time." Consequently, the Court does not find that there has been a wrongful or unfair delay in the matter coming to trial. For these reasons, there is no "serious risk" that if Mr. Johnson's trial is not severed, he will be deprived of his Sixth Amendment right. *See Zafiro*, 506 U.S. at 539.

### A.     The Speedy Trial Act

In general, according to the Speedy Trial Act, the trial must begin within 70 days from the defendant's initial appearance or from the filing of the indictment, whichever is later. 18 U.S.C. § 3161(c)(1). However, there are many circumstances and associated time periods that are excluded from the computation of the 70-day period. 18 U.S.C. § 3161(h). To evaluate the reasonableness of delay under the Speedy Trial Act, the Court must consider, in addition to the Court's analysis above, whether the defendant has suffered actual prejudice and whether the delay was needed to make a joint trial possible.

First, the Court has found, as detailed above, that Mr. Johnson has not suffered any actual prejudice. *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999). The docket reflects that the initial time exclusions—through May 3, 2023—were based on the stipulations of the parties with Mr. Johnson's express or implied consent. All of the remaining delay was caused by the filing of discovery motions by Johnson or by him joining in discovery motions filed by his codefendants. *United States v. Rakestraw*, 2021 WL 3668316, at \*6–9 (D. Ariz. June 16, 2021); *United States v. Noriega*, 746 F.Supp. 1548, 1558-1560 (S.D. Fla. 1990). Though Mr. Johnson has objected to the Court granting the requests of the codefendants not to set a trial date, but he not requested a trial within the 70 days required by the Act.[9] Thus, the Court finds that Mr. Johnson has not

---

[9] For example, Mr. Johnson filed a "Speedy Trial Demand" on May 24, 2023 (Doc. 653). At that time, he

1 demonstrated that he has suffered prejudice under the Speedy Trial Act.

2     Second, this case is complicated due to the sheer number of acts alleged to demonstrate that the Aryan Brotherhood is a criminal enterprise and due to the evidence needed to demonstrate criminal liability under RICO claim brought in Count 1. To prove Count 1, the government will be obligated to present the evidence related to the enterprise no matter whether there is one trial or one trial for each defendant. Toward this end, the government has produced thousands of items of discovery, its investigation is ongoing[10] and the number of witnesses to prove the alleged acts will be extensive. *See United States v. Lewis*, 611 F.3d 1172, 1176 (9th Cir. 2010). The need for codefendants to file motions and to make discovery efforts all go toward the remaining delay was due to efforts to make a joint trial possible.[11] Consequently, the Court finds that the delay has been reasonable and geared toward the goal of a having joint trial. Thus, the Court does not find that the Speedy Trial Act requires granting Mr. Johnson's motion to sever because he has not overcome the strong presumption for a joint trial. *United States v. Zar*, 790 F.3d, 1036, 1043 (10th Cir. 2015).

**ORDER**

For the reasons discussed, Mr. Johnson's motion to sever is **DENIED**.

IT IS SO ORDERED.

Dated:   **October 13, 2023**            */s/ Jennifer L. Thurston*
                                                   UNITED STATES DISTRICT JUDGE

---

sought a trial to start more than six months later. *Id*. Still outstanding at that time were pretrial motions he filed or joined in (Doc. 526; Doc. 528; Doc. 595; Doc. 642) and after this he filed or joined in other motions (Doc. 663; Doc. 666; Doc. 667; Doc. 668; Doc. 677; Doc. 678; Doc. 722) Consequently, time had been excluded from a time before he filed his Speedy Trial Demand through now due to these pretrial motions. 18 U.S.C. 3161(h)(1)(D). Thus, though he filed this document, it was little more than an empty gesture.

[10] That being said, the Court anticipates that it will set the trial date at the next status conference. Thus, all parties are strongly urged to redouble their efforts to conduct and complete their discovery of this case.

[11] *See United States v. Casellas*, 842 F. App'x 95, 97 (9th Cir. 2021) [Finding that continuances in the conspiracy case was appropriate to allow for the joint trial.]

11